3:16mj 355JGM

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | ss: New Haven, Connecticut |
| COUNTY OF NEW HAVEN | : | |

### AFFIDAVIT

I, Jonah Mazzacane, a Special Agent with the Drug Enforcement Administration, being duly sworn, deposes and states:

1.      I am employed as a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed for approximately 7 years.

2.      I am currently assigned to DEA's New York Drug Enforcement Task Force, Group T-33. I have also been assigned to the DEA New Haven District Office ("NHDO") Tactical Diversion Squad ("TDS"), which investigates those drug traffickers and organizations responsible for diverting and distributing pharmaceuticals and other drugs within the State of Connecticut. Due to the abuse and trafficking of opioid based pharmaceutical pills and the correlated abuse and trafficking of heroin, the DEA NHDO TDS is also actively conducting investigations involving individuals and organizations involved with the distribution of heroin. During my assignment to the DEA NHDO TDS, and previous (and current) assignment to the DEA New York Drug Enforcement Task Force, I have prepared numerous affidavits in support of applications for federal search warrants and arrest warrants, as well as in support of authorizations to conduct electronic surveillance. As a case agent, I have directed and coordinated electronic surveillance, controlled purchases of drugs, physical surveillance, undercover activities as well as debriefed and managed confidential sources. I am familiar with the manner in which individuals obtain, finance, store, manufacture, transport, and distribute

their illegal drugs. I have a Bachelor of Arts degree from Roger Williams University. I have completed the sixteen-week DEA Basic Agent Trainee academy in Quantico, Virginia. I have also attended numerous law enforcement training courses related to the field of drug law enforcement.

3.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. Currently, I am involved in an investigation of a fentanyl overdose death that occurred in Torrington, Connecticut on or about May 20, 2016. In particular, I am investigating potential violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute, and distribution of, heroin and fentanyl) and 21 U.S.C. § 846 (conspiracy to distribute heroin and fentanyl).

4.      This affidavit is submitted in support of a search and seizure warrant for a cellular telephone marked AT&T, GALAXY SIII, Samsung, IMEI 351873058989166, S/N R31DA06AP4E, 16 GB, which was seized on August 23, 2016 ("the subject telephone"), which is described in Attachment A. The subject telephone is maintained at the DEA New Haven District Office at 55 Church Street, New Haven, Connecticut.

5.      This affidavit does not set forth all of the facts and evidence that I have gathered during the course of the investigation of this matter. Rather, this affidavit sets forth facts and evidence that are relevant to the requested search warrant. The statements contained in this affidavit are based, in part, on information provided by Special Agents and Task Force Officers of the DEA, as well as the Torrington Police Department as well as officers from other law enforcement agencies, and on law enforcement officers' review of seized electronic evidence

(including stored text messages), and on the experience and training of the affiant.

## BACKGROUND

6.      This investigation by the DEA NHDO TDS involves the investigation into a fentanyl overdose that has resulted in death.  The fentanyl source of the supply has been identified as an individual utilizing 860-480-8944. The overdose occurred in Torrington, Connecticut on or about 05-20-2016.

7.      Thus far in the investigation, investigators were able to analyze telephone text messages recovered from the cellular telephone of the Victim, analyze telephone toll records associated with the source of supply, review medical records and speak with witnesses involved with the investigation.  Pursuant to a search warrant, investigators were able to review text messages and data from the 860-480-8944, a telephone serviced by Verizon Wireless.  There is probable cause to believe that GARRETT GOMEZ was the user of 860-480-8944.  On August 23, 2016, investigators arrested GARRETT GOMEZ (date of birth xx/xx/1990).

## PROBABLE CAUSE

### INVESTIGATION OF VICTIM

8.      On 05-20-2016, at approximately 12:43 p.m., members of the Torrington Police Department responded to a reported heroin overdose of a thirty-year old male, hereinafter referred to as the Victim, at a residence located on Pearl Street in Torrington, CT.   Campion Ambulance service also responded to the scene.  Dr. Childs declared the presumptive time of death to be 1 p.m.

9.      The Victim was located at his residence on 05-20-2016 by his girlfriend, hereinafter referred to as Witness #1.  Witness #1, discovered the Victim and ran outside the residence to inform a Torrington Police Officer working a private duty job nearby.

10.     Officers observed the Victim lying on a bed with his feet on the floor.  The

Victim was laying perpendicular to the bed with his feet on the ground and his right arm lying

upwards on a pillow.  On the bed was a black lock box; on top of the box were six wax paper

folds containing suspected heroin.  Officers also located six pieces of wax paper folds containing

suspected heroin residue on Victim's bedside table.  Based on training and experience officers

know that heroin users typically purchase suspected heroin in small wax paper envelopes that are

folded down and sometimes secured with clear tape.  The user usually rips the wax paper

envelopes into two pieces to access the contents.  Thus, six pieces of wax paper folds are

indicative of 3 fully intact wax paper folds of heroin.  Those 3 used wax paper folds along with

the six unused wax paper folds indicated that the suspect likely purchased 9 wax paper folds of

suspected heroin.  Several of the folds were stamped with the word "Blackout".  Based on

training and experience, Officers know that heroin folds are often stamped with unique

identifying marks to distinguish them from competitors' supplies.

11.     Also located at the scene were a large hypodermic needle, a metal spoon with a

small piece of cigarette filter stuck to it, a bottle labeled "Winstrol", four prescription bottles, an

LG cellular telephone (located on the Victim's bed, hereinafter referred to as Victim's cell phone

#1), and a second cell phone (iPhone with broken screen, located in the bottom drawer of the

bedside table, hereinafter referred to as Victim's cell phone #2).  Located in a storage container

from the Victim's bedroom were various documents pertaining to the purchase of steroids from

the internet.  In addition, law enforcement located inside the lock-box numerous hypodermic

needles and 7 vials of liquid—4 of which had labels indicating they were testosterone, and 3 of

which had the letters PX on the glass. There was also a small bottle with a label indicating it was

Letrozole.

12.     The substance inside the intact wax folds was tested by SGT Baldis resulting in a positive result for the presence of fentanyl.  Based upon my training and experience, I know that heroin is sometimes laced with fentanyl.  Purchasers of heroin may not know that they are receiving a product that contains fentanyl, or that they may receive fentanyl instead of heroin.

13.     A search of the Victim's vehicle resulted in the discovery of hospital discharge paperwork and receipts from Burger King and TD Bank dated May 19, 2016.  According to the Victim's girlfriend, the Victim had been using steroids for a long time and doctors informed the Victim that if he kept using steroids, it would kill him.  The TD Bank receipt showed a withdrawal from an account ending in 9215 for $60.00 at 6:53 pm.

### TELEPHONE ANALYSIS

14.     On 05-20-2016, members of the Torrington Police Department conducted an electronic analysis of Victim's cell phone #1.  Members of the DEA conducted an analysis of the telephone text messages recovered as a result of the electronic analysis.

15.     The electronic analysis showed the Victim's cell phone #1 was communicating via text message with phone number 860-480-8944 during the evening of 05-19-2016.

16.     A member of the Victim's family, Witness #2, identified a person Witness #2 believed to be the Victim's supplier for heroin.  Electronic analysis showed communications between Victim's cell phone #1 and a first name and last name initial matching the number (different from 860-480-8944) believed to be associated with the supplier identified by Witness #2.  In a conversation between Victim's cell phone #1 and the number associated with the supplier identified by Witness #2 referred to "Gg", suggesting that "Gg" was a potential supplier to the Victim (Supplier #2).   The following conversation took place on September 13, 2015 between Victim and Supplier #2:

Victim - Got a half I'll pay

Victim - I mean a full I can pay for half of it

Supplier #2 - What you mean

Supplier #2 - I can't

Victim - Nothing?  I might have to run out than

Victim - U don't have any I'll make a call

Supplier #2 - I can do a half

Supplier #2 - Your my custy bro wtf

Victim - If u can't don't worry.  I don't want u to not have any

Supplier #2 - Yeah bro

Supplier #2 - If you go to gg we ain't friends no more

Victim - Whattttt

Victim - Arnt u out

Victim - Don't be like that with me bro

Victim - Better make a move I'll keep him down here as long as I can

In the foregoing, based on training and experience and the context of this investigation, I believe that "If you go to gg we ain't friends no more" is an indication by Supplier #2 that Supplier #2 would be upset if the Victim obtained narcotics from "gg", another source of supply.  It is common for suppliers to attempt to keep the same customers coming back to them.

### TEXT MESSAGES –Victim, 860-480-8944

17.     On May 19, 2016, at 6:32:29 pm, Victim's cell phone #1 received a text message from 860-480-8944 asking, "Same as last time or".  Victim's cell phone # 1 responded at 6:32:54 pm, "Yeah 9 for 60".  There is then further text conversation about the meeting.  The number

860-480-8944 is associated with a contact in Victim's cell phone #2 identified as "Gg".

18.      On May 19, 2016, at 7:09:11 pm, Victim's cell phone #1 sent a text message to 860-480-8944, "Already and went and got the money".  At 7:13:41 pm, Victim's cell phone #1 received a text message from 860-480-8944, "K About to leave call you asap".

19.      Based upon my training and experience, I believe that during the above referenced text message conversation, the Victim and the Target have a conversation in which the Victim states he would like to purchases 9 bags of heroin for $60.  Based on my training and experience, this is consistent with a price for small user quantities of heroin.

20.      A download from Victim's cell phone #2 showed that Victim's cellphone #2 had 860-480-8944 listed as "Gg" in the contacts.  Victim's cell phone #2 also had a different phone number listed for "Gg 2".  At one point in September 2015, Victim's cell phone #2 sent the same text message to the numbers associated with Gg and Gg 2, which appears to indicate that Gg and Gg 2 are the same person.  Text messages were also located between the Gg 2 number and Victim's cellphone #2 relating to narcotics transactions.  However, the number for Gg 2 does not appear to have been active since mid-September 2015.

21.      On September 16, 2015, Victim's cell phone #2 sent a message to Gg 2 stating, "What kinda bags u got? Dunkin donuts" Heroin bags are typically identified by the stamp on the bag. On August 23, 2016 Victim's cell phone #2 sent a text message to 860 307 0015, which was also listed as "Gg".  The message stated, "U up?  Coming to new Hartford at all?"  Gg then responds, "I can if it worth it."  Victim cell phone #2 responds, "A bun worth it."  Street level heroin is often sold in quantities of 10 wax paper envelopes, or "bags" which are known as a "bundle."  "Bun" is likely a text message abbreviation for "Bundle."

## ADMINISTRATIVE SUBPOENA

22. On 05-23-2016, members of the DEA issued an administrative subpoena to Verizon requesting subscriber information and toll records related to telephone number 860-480-8944. According to Verizon, this telephone number is currently subscribed to a prepaid customer with "info update" listed in the name section. Also, according to Verizon this account was established on October 25, 2015. Based upon a subpoena return from July 22, 2016, 860-480-8944 may be out of minutes, as it has been receiving incoming calls, but not text messages or outgoing calls.

## SEARCH WARRANTS AND SUBSEQUENT INVESTIGATION

23. On 6/30/2016, United States Magistrate Judge Sarah A. L. Merriam signed a search and seizure warrant for Verizon Wireless for 860-480-8944, the phone number for Gg that the Victim's cell phone #1 had sent text messages to in order to obtain the suspected fentanyl.

24. Based on the execution of the aforementioned search warrant, in a text message documented on 5/18/2016 at 13:29:17 phone number 860-480-8944 (Gg) sends a text message to 860-618-8810 stating, "This is garret fro offer up." The suspect's first name being "Garret" is consistent with his street name being "Gg." In a text message documented on 5/18/2016 at 9:50:40 phone number 860-605-3402 (A CLEAR report showed this number belongs to an individual with the initials P.B. of Torrington, Connecticut) sends a text message to 860-480-8944 (Gg) stating, "I just understand now that all lol \nVenting..Sorry Garett haha"

25. Based on the execution of the aforementioned search warrant, a text message documented on 5/14/2016 at 10:06:45 was sent from 860-480-8944 (Gg) to 860-806-7525 stating, "Ya right your a lying i been homi sitting in my truck wu never came here". A subpoena for this phone number (ending 7525) showed it was last listed to an individual with the initials W.S. of Barkhamsted, Connecticut but listed a financially liable person as Michelle Lalli of an

address in Torrington, CT.  In another text message documented on 5/20/2016 at 15:27:24 phone number 860-480-8944 (Gg) sends a text message to 860-869-9272 (A CLEAR report showed this number listed to an individual with the initials I.K. of Weatogue, Connecticut) stating, "My truck to  love can barley hear you but guess just meet me at like winsted stop and shop or better yet the park and ride right next to it".  In another text message documented on 05/20/2016 at 15:51:28, phone number 860-480-8944 (Gg) sends another text message to 860-869-9272 stating, "Yo my truck is over near old packy".  These text messages indicate that Gg owns a pickup truck.

26.     Detective (DET) Kyle Johnson of the Torrington Police Department then researched the first name "Garret" with the last name starting with G in Torrington Police History.  DET Johnson found a case (09-27728) from 8/7/2009 involving a GARRETT GOMEZ with a date of birth of xx/xx/1990 with a last known address in Winsted, CT.  DMV records showed, when previously run by Detective Kyle, that GARRETT GOMEZ had a blue 1994 Chevrolet S10 pickup truck registered in his name.  It is not known whether GOMEZ still has that vehicle.  DET Johnson also found two other individuals named "Garrett" with last names beginning with "G" in Torrington Police Department history but neither of them had any registered vehicles.

27.     Further examination of the Verizon Wireless search warrant information showed that on 5/18/2016 at 22:42:27 phone number 860-480-8944 (Gg) receives a text message from 860-485-4230 stating, "Sounds delicious \nEnjoy\nLove you good night \nXoxoxo"  SA Mazzacane later determined (utilizing the CLEAR database) that the phone number 860-485-4230 was associated with Michelle Lalli.

28.     A CLEAR report on GARRETT GOMEZ shows Michelle Lalli, with a phone number of 860-379-2251.  The Verizon Wireless records obtained through the search warrant show Gg called that number on 3/4/2016 at 20:15 hours and on 11/09/2015 at 13:18 hours.

29.     DET Johnson researched Michelle Lalli on Facebook and found that she lists a GARRETT GOMEZ as her son.  Lalli has links from her Facebook page to two GARRETT GOMEZ Facebook pages.  The first GARRETT GOMEZ page, **https://www.facebook.com/profile.php?id=100009300188671&pnref=story** is accessed by clicking on GARRETT GOMEZ's hyper-linked name that is associated with the photographs on Lalli's page.  The second GARRETT GOMEZ Facebook page, **https://www.facebook.com/garrett.gomez.14?pnref=about.family** is accessed by clicking the "About" link on Lalli's page then the "Family and Relationships" link.  Under that section, she lists "Garrett Gomez" as her son.

30.     The link, **https://www.facebook.com/garrett.gomez.14?pnref=about.family** brings users to a page with a profile picture of a little girl and a male.  One of the photographs in the "Photos" section shows a female who is tagged as Amber Case, the same little girl, and a male who is presumably GARRETT GOMEZ.  That photograph is also titled "Garrett Gomez amish bread wit the locks – with Amber Case"  There are also photographs of the same male with Michelle Lalli.

31.     The GARRETT GOMEZ profile, **https://www.facebook.com/profile.php?id=100009300188671&pnref=story** has a profile picture of the same young child as the other GARRETT GOMEZ profile.  The profile has very few photographs.  The little girl in the photograph is likely GARRETT GOMEZ's daughter with Amber Case.  This is believed to be the case because when the cover photo for this profile was

updated on January 5, 2016 to the photo of the child, Amber Case commented stating, "Our baby girl is growing so fast!"  Clicking on Amber Case's name brings users to the profile, http://www.facebook.com/amber/case2.  On that profile page in the Photos tab there is a photograph of Amber Case, GARRETT GOMEZ and ____[1].  The three individuals in the photograph have their faces "tagged" with names.  The photo is also titled, "Amber Case With _____ and GARRETT GOMEZ".  Hovering over _____'s name with the curser shows she was "tagged" by Amber Case.  Further analysis of the text message records obtained from Verizon Wireless showed that on May 13, 2016 phone number 860-480-8944 (Gg) received a message from 860-485-4230[2] (the phone number associated with Michelle Lalli) stating, "How's your day going?\nDid you ever call DCF about seeing _____".

32.     On Wednesday July 13, 2016 at 7:00pm, four new photos were posted to the Michelle Lali Facebook page.  The heading stated, "Michelle Lalli added 4 new photos - with Garrett Gomez and 2 others at Tyler Lake".  DET Johnson then clicked on GARRETT GOMEZ's hyper-linked name which brought the user to the Facebook page: **https://www.facebook.com/profile.php?id=100009300188671&pnref=story** (one of GARRETT GOMEZ's profiles).  On that page, GARRETT GOMEZ advertised, under his name, a pair of Nike sneakers listed as, "Nike Jordan true flight sneakers for sale in Winchester, CT" for $100 on March 26, 2016 at 4:09pm.  On March 26, 2016 at 4:08pm he posted a pair of Adidas sneakers for sale listed as "Addis ZX flux ocean in Winchester, CT" for $40.  Under the

---

[1] A name appears in the area identified by the blank space; however, that name is withheld to protect the identity of the minor child.  The other blank spaces in this paragraph are also used to devote that a name appears, but that the name is withheld to protect the identity of the minor child.

[2] In the affidavit submitted in support of the search warrant, complaint, and arrest warrant dated August 10, 2016, this number was erroneously listed as 860-480-8944.

advertisement he wrote, "New (never used) - only 2 pairs left Brand new in box Extra set black laces Size 9 and 9.5".

33.    Further examination of the Verizon Wireless search warrant information showed that on 5/18/2016 at 13:29:17, phone number 860-480-8944 (Gg) sends a text message to phone number 860-618-8810 (a CLEAR report showed this number listed to an individual with the initials A.W. of Torrington, Connecticut) stating, "This is Garret fro offer up".  At 13:34:52, 860-618-8810 asks, "Yu got pics of the jays?"  "Jay's" or "J's" is sometimes used as a street term for Air Jordan sneakers.  At 13:38:25 Gg replies, "Well were you comin from cause i leavin town few min but gotta make a stop b4 i leave i dont got pic on this phone and already left my house but i got t".  At 13:38:26 Gg further writes, "0 hem wit me they in the box never worn".  At 13:39:16 860-618-8810 replies, "For 50?  I'm guna be up towards nanny drive in winsted".  Gg then responds at 13:43:29, "You wanted addias to right ill make you deal on both".  At 13:44:04 860-618-8810 writes, "How much?"  At 13:44:46 Gg writes, "Ill do 60 for js and 25 for addias".  At 13:45:20 860-618-8810 writes, "Lol na yu already agreed to 50 on the jays".  At 13:45:51 860-618-8810 writes, "If anything I'll give yu 80 to bring me the jays and addidas."  At 13:48:07 Gg writes, "I did lol ok were you at 80 ok".  At 13:48:50 860-618-8810 asks, "The addidas 9.5 right?"  This text message conversation appears to relate to the sneakers being sold over GARRETT GOMEZ's Facebook page.

34.    In a text message documented on 5/18/2016 at 18:39:24 phone number 860-294-6109 (a CLEAR report showed this number is a prepaid cell phone operated by Cellco Partnership dba Verizon Wireless) sends a text message to 860-480-8944 (Gg) asking, "What u got?"  At 18:39:46, 860-480-8944 (Gg) replies, "Blackout".  This message appears to reference the stamps on the wax paper envelopes of heroin that GARRETT GOMEZ was selling.  This

reference to "Blackout" was made 1 day prior to the day Victim purchased 9 wax folds of suspected heroin from "Gg".

35.    Analysis of the text messages seized from Verizon Wireless indicate that GARRETT GOMEZ is further engaged in the sale of narcotics beyond the sale of Fentanyl to Victim.  On 5/13/2016 phone number 860-480-8944 (Gg) sends a text message to phone number 860-921-3773 (a CLEAR report showed this number is a prepaid cell phone operated by Cellco Partnership dba Verizon Wireless).  The message stated, "Dude the stuff I got is not bad dude its diff than via gator its similar but better".  860-921-3773 replies, "im strait man.  After doin that other stuff to tolerance is up.  An 1 of those others is like 3 of them".  860-921-3773 further replies, "I dont have much cash an dont wanna spend it all on something i dont really want yak no".  860-480-8944 (Gg) replies, "Ya its cool i hate the stars and bear i think they are trash to be true lol whatever in that shiv is wack but ppl love it i like stuff i got now but ill have those after tell her to wait it will be well worth it".  860-921-3773 replies, "An she wants those ones.  cuz she was pod last time she got em an they were small".  860-921-3773 further responded, "Thing is to she used to going to bury.  an she dont mind payin more.  but wwants it to be worth it ya kno".  860-921-3773 then writes, "An those emps from last nite was that brown flat stuff again".  Based on training and experience, Officers recognize this conversation as one regarding the sale or potential sale of drugs.  When they mention "gator", "stars", and "bear" they are referring to the stamps often placed on heroin "bags" to distinguish them from competitors'.  When 860-921-3773 mentions going to "bury", it is likely a reference to Waterbury, Connecticut.  Many heroin and drug users from the Winsted/Torrington area travel the short distance to Waterbury to purchase drugs at a discounted rate.  "Bury" is a common local term for Waterbury.

36.    On 5/13/2016 phone number 860-480-8944 (Gg) receives a text message from 860-712-7872 (a CLEAR search revealed no information).  The message stated, "the only guy I got that has the good fr a good price and I'd rather give u my doe then some nigger with baby formula".  Baby formula is sometimes used as a cutting agent with heroin.

37.    Also on 5/13/2016, 860-480-8944 (Gg) sends a text message to 860-712-7872 stating, "Dude my dude wit stars just called so I had to fly down b4 he left town so ill have the good when I get back sorry".  The reference to "stars" is likely a reference to the stamp on the heroin packages.

38.    On 5/13/2016 860-480-8944 (Gg) receives a text messages from 860-921-3773 stating, "alrit. Did u reup".  Officers know that "reup" is a common narcotics term and refers to when a dealer purchases a supply of narcotics for sale to his or her customers.

39.    On 5/20/2016 860-480-8944 (Gg) receives a text message from 828-522-4840 (a CLEAR report lists this number to Level 3 Communications with no further subscriber info). The message stated, "You heard [Victim First Name and Last Name] died this morning, and alright hold on".  860-480-8944 (Gg) replies, "I didnt from what".  828-522-4840 then writes, "Od".

40.    A report from the State Of Connecticut Office Of The Chief Medical Examiner listed Victim's Cause Of Death as Acute Fentanyl Intoxication.  A Contributing Cause was listed as, Dilated Cardiomyopathy.  The Manner of Death was listed as, Accident (Injected Fentanyl).

41.    On August 10, 2016, United States Magistrate Judge Sarah A. L. Merriam signed a complaint and arrest warrant for GARRETT GOMEZ.  GOMEZ was charged with possession with intent to distribute and distribution of a mixture and substance containing a detectable amount of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  In addition, on

August 10, 2016, United States Magistrate Judge Sarah A. L. Merriam signed a search and seizure warrant for cellular telephone assigned telephone number (860) 480-8944.

42.     On August 23, 2016, the affiant observed GOMEZ exit his apartment building at an address in Barkhamsted, CT carrying a cell phone.  GOMEZ entered a red 2002 Ford Focus, bearing CT registration 6ASTB9.  The affiant and TFO Richard Stook approached GOMEZ and instructed him to exit the vehicle and placed him under arrest.  The affiant located the cell phone (phone is marked AT&T, GALAXY SIII, Samsung, IMEI 351873058989166, S/N R31DA06AP4E, 16 GB) on the front passenger seat of the Ford Focus and seized it.  At approximately 12:33pm the affiant placed a phone call to 860-480-8944, which went directly to voicemail.  The cell phone seized showed no indication of an incoming call.  The cell phone received incoming calls prior to and after the affiant placed the phone call to 860-480-8944, indicating to investigators that the cell phone seized is not the phone subject to the warrant.  This phone is being stored at the DEA New Haven District Office.

43.     Based on my training and experience, I know that individuals involved in the sale of narcotics often switch phones, or use more than one phone.  Sometimes, a particular phone is used to communicate with specific customers, while another phone is used to communicate with other customers or a supplier.  As indicated above, there appear to have been more than one phone number associated with "Gg" or GARRETT GOMEZ.  There is probable cause to believe that the phone carried by GARRETT GOMEZ on August 23, 2016 also contains evidence of narcotics possession, distribution, and conspiracy.

## INFORMATION REGARDING CELLULAR TELEPHONES AND

## THE REQUSTED SEARCH WARRANT

44.     Based on my training, experience, I know that the aforementioned subject telephone may have some or all of the capabilities that allow it to serve as a wireless telephone, digital camera and video recorder, portable media player, global positioning system (GPS) navigation device, a hand-held radio, and a personal digital assistant (PDA).  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the particular Device, as well as evidence relating to co-conspirators with whom the Device was in contact.

45.     With regards to the subject telephone, I request permission to seize and search the subject telephone for evidence relating to the drug related overdose of the Victim, the unlawful distribution, and the possession with intent to distribute, narcotics, including evidence of communications between GOMEZ and other co-conspirators involved in the distribution of narcotics as well as other criminal acts.  Based on my training and experience, and as set forth in this affidavit, I know wireless telephones are used by co-conspirators to communicate efforts to conduct criminal activities and it is likely that the subject telephone was used by GOMEZ to communicate with co-conspirators in the unlawful distribution of narcotics.  Furthermore, based on my training and experience, I know that internet browsing history in wireless phones can contain evidence of text communications between co-conspirators who distribute narcotics, or conspire to do so.  Also based on my training and experience, I know that internet browsing history in wireless phones can contain evidence of internet searches for locations and addresses used for storing and distributing narcotics. Also based on my training and experience, wireless phones may contain videos and images of co-conspirators, possible locations to ship, receive, or store narcotics, the quantity of narcotics and/or shipping packages within which the narcotics are concealed, and firearms, as firearms are generally considered tools of the trade in narcotics

activity. Specifically, based on my training and experience, I know the following information

tends to exist on wireless telephones, including phones used by those involved in the distribution

of narcotics:

    a.    the telephone number, ESN number, IMEI number, other identifying number, serial number, and SIM card number of said telephone;

    b.    the numbers, digits, stored messages (voice and/or text), letters, symbols, data,   information, and images stored in the memory of said device;

    c.    descriptions of time, date, locations, items, or events showing or tending to show  the commission of, or connecting or tending to connect a person to, the above-described crimes;

    d.    any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

    e.    any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

    f.    GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

    g.    saved searches, locations, and route history in the memory of said devices;

    h.    internet browsing history, to include, internet searches in the memory of said   device;

    i.    images and videos in the memory of said device; and

    j.    evidence of user attribution showing who used or owned said device at the time particular items were edited or deleted such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

    44.    It is also requested that the Court authorize the retrieval of the above described

stored electronic information by printing said stored electronic information or otherwise

reproducing said stored electronic information, by converting said stored electronic information,

or by copying said stored electronic information into storage in another device.  I am aware that in

some cases the software or equipment necessary to analyze wireless telephones in this manner is

not readily available to law enforcement during the course of the execution of a search and/or

arrest warrant.  Further, turning on wireless phones in a non-laboratory setting, where there is no

"jammer" active or radio shielding devices, permits additional signals to be received by the phone and thereby alters the data present in the phone at the time of seizure. Therefore, it is often necessary to remove a seized phone to a laboratory in order to preserve the data therein from being corrupted.

45.     It is also requested that warrant be deemed executed once the subject telephone has been seized in the manner described above, and that further analysis of the images be permitted at any time thereafter.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

46.     The warrant applied for with respect to the subject telephone would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

47.     As described above and in Attachment B, this application seeks permission to search and seize things that the subject telephone might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

48.     Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can

mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the DEA, or other law enforcement agency, intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## CONCLUSION

49.     I submit that this affidavit supports probable cause to believe that the subject telephone contains evidence of criminal activity committed by GARRETT GOMEZ, including possession with intent to distribute and distribution of controlled substances, in violation of 21 U.SC. §§ 841(a)(1) and 841(b)(1)(C) and conspiracy to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C. § 846. I request that the Court issue the proposed search warrant.

Jonah Mazzacane
Special Agent, DEA


Subscribed and sworn to before me this 1 th day of September, 2016

/s/

JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is:

The subject telephone, more particularly described as a cellular telephone bearing markings AT&T, GALAXY SIII, Samsung, IMEI 351873058989166, S/N R31DA06AP4E, and 16 GB, and which was seized on or about August 23, 2016, and which is presently in custody of the Drug Enforcement Administration, 55 Church Street, New Haven, Connecticut.

## ATTACHMENT B

All stored electronic information contained on the subject telephone (which is in DEA custody), which constitutes evidence of potential violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute and distribution of controlled substances) and 21 U.S.C. § 846 (conspiracy to possess with intent to distribute and to distribute controlled substances) to include the following:

1.      the telephone number, ESN number, serial number, and SIM card number of the subject telephone;

2.      the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the subject telephone;

3.      descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes (violations of 21 U.S.C. §§ 841(a)(1) and 846);

4.      any and all records, however created or stored, which tend to demonstrate ownership and use of the device, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the subject telephone;

5.      any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the subject telephone, such as passwords, sign-on codes, and program design;

6.      GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

7.      saved searches, locations, and route history in the memory of said subject telephone;

8.      internet browsing history, to include, internet searches in the memory of the subject telephone;

9.      images and videos in the memory of the subject telephone; and,

10.    evidence of user attribution showing who used or owned the subject telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described subject telephone may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device/s.